Our next case up is 4-11-1125. Henry and Steven Fisher. Appearance of Mr. Anderson. You are he, sir? Yes. Mr. Bella, Mr. Beckett for the appellate. I want to mention, by the way, that it's up for 2 o'clock and we ask everyone to be early, so in case our schedule permits us to go early, we are able to do it. And thank you for being here, because here we are 35 minutes early and we'll be able to get started and it'll be helpful for the court. I want to point it out that even though we ask you to be here, not everyone always is, and we want to thank you, gentlemen, for being here. So with that, Mr. Anderson, you may proceed, sir. May it please the court, counsel. My name is Matt Anderson. I'm here with Webber and Theis on behalf of the plaintiff. The plaintiff has requested that this court review the trial court's determination of summary judgment in favor of the defendant, who also happens to be her sister, on plaintiff's claims of tortious interference and undue influence against the defendant, all related to some assets the plaintiff claims from her deceased mother. It's our position that the trial court incorrectly determined that the Dead Man's Act should not have barred certain conversations between the plaintiff and her mother. The plaintiff should not have been barred from testifying to these conversations, specifically because she has sued the defendant in her individual capacity. The matters stated in these conversations, had they been admitted, would have created genuine issues of material fact that would have overcome summary judgment, which interestingly is a point that was noted by the trial court in its opinion.  Do you agree that without the testimony, summary judgment was appropriate? No, I do not. I do believe that there were additional facts that were asserted that could also defeat summary judgment. However, it appears that the trial court has relied primarily on the Dead Man's Act in ruling against the plaintiff on the summary judgment issue. The Dead Man's Act, while it does bar certain testimony regarding certain conversations with deceased persons, it is limited in its scope and application. It's our position that it's certainly not designed to harm a living person such as the plaintiff when she has claims of individual tortious conduct against another living individual. Likewise, it's not our position that the defendant should be able to clothe herself in the Dead Man's Act to avoid exposure to liability for tortious claim of her own. In fact, the Dead Man's Act is limited if you look at the text of the statute itself to conversations when there is a plaintiff or a defendant that is defending or suing on behalf of a deceased person. That's not what we have here. What we have here is a plaintiff individually suing a defendant individually for damages. Well, but the definition of representative, according to the statute, means an executive, administrator, heir, bigotier, or deceased person. That's who she is, isn't it? Well, it is true that she is an heir. I mean, she happens to be the daughter of the deceased. There's no doubt about that. And this is about what she's inheriting. Well, what she's suing for, actually, at least in the tort claim, is she's suing for damages from the defendant. And I think there's an important distinction that was made in the N. Ray Estate of Ellis case, which actually has been cited in both briefs, between an undue influence or will contest, which challenges the will itself, which we have done, challenges the validity of the will, but also a tort claim, which we filed. Now, it's part of the estate proceedings for judicial economy, but is essentially a separate cause of action against the defendant individually. Now, both sets of facts that are used in both causes of action are the same or fairly similar, but as stated in N. Ray Estate of Ellis, it doesn't matter. They're separate causes of action. One is against the contested validity of the will itself. The other is an actual claim against an individual defendant. So for purposes of the tort claim, at least what we have is an individual plaintiff suing an individual defendant for damages. That's the distinction here between the two. So it's your position the statute doesn't apply at all? That's correct. And that's why, actually, we mentioned, as far as the standard... Dead Men's Act has been around a long time. If that were the case, why are we supposed to now be the first case to so hold? Well, I think that there have been other cases that are similar to the case that we have here. Nothing like this. I mean, we'd say that, yes, there are errors and they would be... Dead Men's Act would normally apply, but not here because... Well... That's essentially your position. I don't know that they necessarily use those exact words, but I think... No, they don't. I think if you look at a case we cited, the Cronaut case, which admittedly is a little dated, but does give us some guidance in the sense that... Well, it's also rather different, too. Well, but it does involve a plaintiff who happens to be the daughter of the deceased who was suing for certain assets. Well, the reason I phrase it the way I did is because we get a lot of cases along these same lines, where there's been claims that Mama really had... This lady had changed her mind and overpowered her normal thoughts, and Mama never would have done this except for this, and typically they are siblings or relatives in some fashion. I don't know how many times this is July. I've seen it this year alone. Yet, given all of these cases, we don't have any precedent that would hold, as you're asking us to hold, that somehow the Vet Men's Act draws this distinction between statutory definition of errorful... Essentially what you're saying is error for what purpose? Well, I mean, I think if we look at it maybe from a policy standpoint, it just doesn't appear to necessarily make sense in this case. Because what she's suing for is damage to an individual defendant. By the way, that's not a bad argument. As a matter of fact, they thought your whole policy argument was a pretty good one, except for the fact that, for whatever reason, the legislature has that paragraph defining what representative means. So, confronted with the clear statutory language, I don't know that we can get into policy arguments. Well, even if we look at the cases that have been cited. For example, some of the cases that have been cited are cases where there's an administrator or an executor suing on behalf of the estate. I don't think anybody disputes that that's a representative by definition. Administrator and executor come first in the statute. Then we talk about errors and legatees. If you look at the errors and the legatees, the cases that have been cited, each case involves a different situation than we have here, where we have a plaintiff who hasn't received anything at all. She gets nothing if this will is probated. If the 2002 will is probated, she gets nothing. She's not trying to enforce anything that she received under the will. What she's trying to do is seek damages against the defendant for tortious interference of something that she expected to receive. That's the difference for many of the cases that we've seen out there, which uphold the Dead Man's Act applicability to an error or a legatee. None of the cases that we've cited where the Dead Man's Act is actually in place, for example, the Coleman case cited by Mr. Beckett, is a situation where a plaintiff stepped in to try and enforce an asset that they received. We don't have that here. The plaintiff doesn't have anything. She's not enforcing anything against anybody. She's trying to upset the will. Well, but she wouldn't be upsetting the will. What she would be doing is seeking damages in a separate, granted they were filed together, but a separate tort action. So if the will is probated, at least the way I understand it, the will would be probated. Everything would be transferred, in this case, to the defendants, and she happens to get everything under the 2002 will, which is completely inconsistent with the 1997 will. And then subsequently to that, the claim for damages would be enforced against the defendant individually. So it wouldn't be a matter of trying to pull things from the estate itself. Isn't your client suing as an heir of the decedent? Well, she is an heir of the decedent. I mean, there's no doubt that she happens to be the daughter. But that alone. You know, the Dead Man's Act says it applies when any party sues or defends as the representative or heir of a deceased person. Well, I think that's the key distinction, is whether or not she's suing as a representative of the estate. She's suing as an heir. She's suing as someone. She's saying, I was the heir, and you've taken away my heirship rights. Well, but what she's seeking is not something out of the estate. She's seeking something from the defendant. Well, that defeats the estate planning, doesn't it, that she prevails? According to the will, the current arrangements are for Rebecca to get all this stuff under the will, and Brenda is saying, no, that's wrong. I should get it. Now, she touches this in terms of torturous interference, but essentially she wants the inheritance. Isn't that what this is about? Well, but that's what she asks for, the inheritance in the will contest, because that invalidates the will, and then we would look back to the 97 will. But that's not what she seeks in the tort claim. They're distinct claims. What she seeks in the tort claim is a recovery from the defendant herself. The idea that they are distinct claims is sort of staggering. You're making the same argument in each count. You're saying that she interfered with the execution of the will. And if you're able to prove that, you probably win on both counts. Well, I think it is important to note that the trial court did mention that if the Dead Man's Act was not available, that there is a genuine issue of material fact. But these are distinct counts. If we look at the Supreme Court case in Ellis, that's clear. They can be the same allegations, completely independent counts from each other, different recoveries, different defendants, different claims altogether, just the same set of facts. And that's okay. That's what the Supreme Court has said. And I think it is important to note that you're right, that there is substantial evidence that if the Dead Man's Act is not here, that there is a cause of action, a viable cause of action for my client. Your argument, though, would allow every will that's filed to be attacked on the basis that it treats the children unequally. Well, I mean, I suppose that that's a possibility, that if there are potential conversations with the deceased, that's true. But I don't think that every single situation where there was a will where someone was either disinherited or received less than they thought they were going to get, they would have enough evidence or enough facts to show a tort claim. I mean, there's a four-part test that protects in this situation. And what we're saying is that in a tort claim, she's met those four parts. The importance of a will is you have the independent lawyer, you have independent witnesses, and the will is judged on the basis of how the will was executed. If you can destroy that will by the testimony of a wronged beneficiary as to a conversation between her and the decedent, the whole idea of wills would be thrown out the window. Well, I don't believe that what the court has done by establishing a separate cause of action is try to usurp the protections that are there only for an undue influence or will contest. I mean, obviously, if that were the case, somewhere along the line, we would have challenged the whole idea of having a separate tort claim. The point here is that it's a claim against the defendant individually. If she has evidence that refutes the claim that's made by our plaintiff, let a jury hear it. That's what we're arguing. You know, this is a matter of credibility of witnesses. It's not a matter of law that she should not be able to testify to these conversations. The Cournot case said if you dismissed the action against the executrix, you could proceed with the action against the individual, but you haven't dismissed the action against the executrix. Well, but there are separate causes of action. The tort claim is not against the defendant. Again. I mean, she happens to be the executor, or the executrix, I'm sorry, but as in the Cournot case, it was the same person. She played both roles. And what the court said in Cournot was if you dismiss the claim in her role as the executor, you can keep the claim against that same person individually. And that's what we've done with the tort claim, is we've brought a claim against the defendant individually, not in any role she plays in administering the estate. You disagree that Cournot said that to obtain that benefit, you have to dismiss the claim against the executor? I don't. I agree that what the Cournot case is saying is that as far as her role, the defendant's role as executor, she was the representative of the estate. That's what the law says. I'm not going to dispute that. Okay. Cournot says you have to dismiss the claim against the executrix. You did not dismiss the claim against the executrix. Under Cournot, you lose. Am I right? Well, but again, in Cournot, from my understanding, it was the same claim against the defendant in two different positions. In our case, they're different claims. The will contest is against the will. It happens to be that we're claiming that it was the conduct of the executor that caused the undue influence. But the separate tort claim is against the defendant individually. As to the tort claim, if the undue influence claim is out, the tort claim should still be in because she's being sued individually, not as a representative of the estate. So it's just the label that's important. Well, I think labels are important. I don't want to give them too much importance. But I think that it's clear here that if we're suing her for conduct as an individual, that's clearly different than suing her for conduct in her role administering the estate. But it's the identical conduct. The conduct of Rebecca that you complain of is the same in both cases. Well, that's true. But that's perfectly okay according to the Ellis case in that we can have separate causes of action using the same conduct. It could be wholly independent. Elias is in the Supreme Court decision, isn't it? I'm sorry. I believe it's Ellis. I'm referring to him. I thought it was Elias. This is in Ray Estate, Ellis. It's 236 L. Second, 45. Okay. It's a 2009 case. Go ahead. In any event, what the court there is doing is showing that you can have the exact same set of facts and have separate causes of action. We do that all the time. Not just in this context. We do it in all sorts of claims. But the effect of it is, in one instance the Dead Man's Act would bar evidence and in the other it would not. And you're saying that's okay. Well, I'm not saying that in one instance it does and in the other it doesn't. I'm saying it's probably more likely. It shouldn't in either. Well, it shouldn't in either. But I'm willing to concede that in the will contest it's more likely since the defendant willed it. The defendant was, in fact, a representative of the estate, at least as the executive. Now, as to the, I'm sorry, assuming that the Dead Man's Act does not apply, and I'm not sure that we need to address this in great detail, but as to the Torah claim, it appears that the trial court was suggesting that there were genuine issues of material fact in Ms. Fisher's affidavit in that she had a reasonable expectancy under the 97 will because there were certain assets identified to her, that she was told about the Yargo property, that she lived on the Yargo property, so there was a reasonable expectation on that end. And also that there was intentional interference in that it's the defendant that claimed that the 97 will was invalid. It's the defendant that suggested that a new will should be drafted, leaving everything to the defendant, only to comply with the wishes of the decedent's now deceased husband. And it's also reasonable to argue that there were obviously damages here because it was the Yargo property and the certificate of deposit that were supposed to go to Brenda that now do not go to her under the 2002 will. So there are obviously damages in the Torah claim. As we've already suggested, in the S to the N do influence count, we would use similar sets of facts to again show the intentional conduct that led to procuring the will, keeping in mind that procuring the will does not mean that the defendant has to be standing over the deceased as she's signing the will, only that at some time she placed that influence on her and it was evident at the time of executing the will. And also we've already established that there's a fiduciary relationship based on circumstantial evidence. In fact, the trial court makes that point in its opinion, that there was sufficient evidence to suggest a fiduciary relationship. So the claim of undue influence is also met, assuming that the Dead Man's Act is not applied to it. Ultimately, what we're dealing with here is summary judgment, the purpose of which is not to try issues of fact, it's determined if triable issues of fact exist. All we're doing here is suggesting that it's too early, it's just too soon. We need to let this go to a jury. We need to let the jury, the trier of fact, determine whether or not it's defendant or plaintiff testimony that's credible. Because the Dead Man's Act is inapplicable here, there are genuine issues of material fact in Ms. Fisher's affidavit, but also that were already stated outside of Ms. Fisher's affidavit. And that's why we're requesting that the court reverse the trial court's ruling and remand further proceedings. Okay. Thank you, counsel. Mr. Beckett? May it please the court? Counsel? EP Fisher decided of her own mind to update her estate plan in 2002. She did that of her own volition, without the assistance or direction of the defendant in this case. She, using her own independent... Are you arguing facts, sir? No, Your Honor. I'm trying to highlight the fact that there is no real contest of the relevant facts, and I'm simply highlighting that. But you bring me right to the point, which is everything that I was about to go through, there is no contest. We have here a situation where independent persons determined the validity of a will by witnessing it in front of each other, satisfying all requirements under Illinois law. They did so without any interference, presence, or otherwise direction from the defendant in this case. No matter what the plaintiff in this action says, they can't get around that basic point. Well, what about if the hearsay or the dead man's act didn't admire the testimony at issue, wouldn't that create a genuine issue of material effect? I disagree. In fact, there is plenty of evidence, there is ample statements in the trial court's order to show that the trial court was satisfied that the defendant had, if she had a burden to address the evidence, had more than met it, and there was nothing... That's not what you do on summary judgment. On summary judgment, if you have one party saying one thing and another party saying the other, you deny the motion for summary judgment, you go ahead and have a hearing on the evidence. But only if there is the other side, and only if those facts that are at issue... Richard, you just told us it doesn't make any difference if there's the other side. You just told us that if we hear both sides in this case, then summary judgment should still be granted. Absolutely not. In fact, it is very clear that just because a fact exists doesn't mean that it is, if it's in dispute, material. Didn't you just tell Judge Steigman that even if the Dead Man's Act did not apply, there was no issue of fact in this case? That is correct. But having said that, the Dead Man's Act... You lost me. If the Dead Man's Act does not apply, you have one witness saying one thing, the other witness saying the other. How can you have summary judgment in a case like that? Because if that testimony that is sought to be admitted, but which is otherwise inadmissible because the Dead Man's Act is immaterial and irrelevant, then it is not a fact that is material to this case. And so it's the fact that one child that has pressured the parent into changing the will, that's irrelevant? If, in fact, that were the case, Judge. Your Honor, I must say that in this situation, when the complaining party was not present either before, during, or immediately after the execution of this instrument, and when the law clearly tells us... She was present before the execution of the instrument? She had lots of conversations with her mother before her mother signed the will, didn't she? She had contact with. Her affidavit talks about her having conversations with her. That is true. It doesn't say what those conversations were about. In fact, if anything, that affidavit indicates that there was an absence of any discussion on the subject of her estate plan. And that, for that reason among others, makes it irrelevant to the question of whether or not that affidavit is relevant. But, as it happens, the Dead Man's Act does apply to this situation, and it is essentially an academic exercise. What are the conversations at issue that, if we were to hold the Dead Man's Act apply, it is your position would not be material? I'm not sure I follow. Going through the affidavit, for example, much of the document is simply a restatement of the conclusory allegations in the underlying complaint. We need not belabor that. There are essentially four or five individual statements that directly attempt to address the issue, one of which I believe is the effort by my client, by the defendant, to put some sort of obstacle between herself and the plaintiff. But even on that point, the court noted that that seemed to be an irrelevant issue because she clearly had access to her mother. The very same affidavit indicates that she was having regular contact with her. So, again, by definition, it just is not an issue that is really in dispute. Well, the Dead Man's Act deals with conversations between the deceased and third parties. Absolutely. What are the conversations that Mr. Anderson sought to have admitted in this case that were barred? I'm not sure I understand why they wouldn't be material, according to your thinking. There are allegations in her affidavit that... I have to actually produce the affidavit and have it immediately in front of me. Okay. I know that in my brief I indicate that there are five that are prohibited by the Dead Man's Act from trial court. Well, I don't want to take up all your argument in pursuing this matter, so I'll let you proceed otherwise. One cannot call an error to be something other than an error for purposes of the Dead Man's Act. Whether or not the plaintiff is satisfied by the plain language of the statute, it remains the statute. It remains the rule of evidence by which this court must make its ruling. And in doing so, there really cannot be any distinction between the executor and the heir for purposes of the definition of a representative under the Act. If it applies to one, it applies to all. The order is immaterial. If there was some other result, then as your honors have indicated, there would be a huge overturning of essentially... What about the Cournot case where the court allowed the plaintiff to dismiss the suit against the executrix but keep the suit against the individual? That was a case that was explicitly not addressing the role of a decedent's estate, as your honor is accurately pointing out. It was replevin and trover. But more to the point, it was in that case not an effort to circumvent the natural requirements of creating a testamentary instrument. It was established, or at least attempted to be established in that case, that we have an asset that is wholly outside of the giving specifically by the decedent. Here... It was a case that involved 25 shares of stock, which the executrix said passed under the will. And the other party said, no, that was given to me before she executed the will. And hence the replevin, hence the rationale for it being sought. And the difference is the plaintiff in this case, when faced with the clear evidence to show that there is no lack of testamentary capacity, attempts to obtain the exact same result by claiming undue influence, but still trying to parse that further, tries to establish that undue influence somehow outside entirely of the will and the estate process. It is different precisely because she does not succeed without that testamentary device. It's very similar to, for example, someone who has not met the six-month deadline to contest a will, then attempt to, when the will has been probated, try to attack an inter vivos trust also established by the testator, but outside of that period, claiming that somehow that item, that act, was different from the way we handle a will. Yes, there are differences in the way execution works. Yes, there are differences and different circumstances under which one might contest it. But the result is exactly the same. It really is attempting to call something else the exact same thing. We have these two items specifically identified in a will, in the 1997 will. There is a change. That change is established. And it is, there is nothing that the plaintiff has said. There is nothing in the affidavit. There is nothing in the evidence to show that those two assets in particular were in any way changed as a result of the defendant's conduct in this case. They cannot point to any effort by the defendant to go with the mother down to the bank and change the registration card on a CD. There is no effort, even though that was clearly shown in the evidence to have occurred, prior to the execution of the 2002 will. There is no effort to deny that even by the plaintiff's own understanding, that property should have been received by deed. Again, that's a factual issue that we don't need to get into. But at the end of the day, it is exactly the same process. It's exactly the same result, but trying to achieve it by going through a different process, trying to circumvent the established rules that this legislature and this court have established through decades of jurisprudence. We would strongly urge this court not to deviate from that established jurisprudence and to deny it. Let me ask you a hypothetical question. Maybe this is a little off the point, I don't know. But say my mother gives me a table and some chairs, and I take possession and I have them for five years. Then my mother dies, and my sister is the executor, and she says, those items pass under the will. Do I get to come in and testify and say, Mom told me I should have those items? I believe that the established jurisprudence is that gifts that are frustrated by prior completed gifts do not pass under the will. Okay, so if there's an argument that there's a prior completed gift, then I get to testify that my mother gave me the items. But again, that has to be through the established evidentiary rules. And there may be limits. In fact, there will be limits on the way that testimony is. Oh, the Dead Man's Act does apply? Well, the Dead Man's Act applies under just about any situation in which the plaintiff is suing or defending in that capacity. How on earth would that come into evidence other than, for example, a plaintiff executor suing under a citation to discover assets through the will? How else does that asset come back into the estate? Okay, so the answer to my question is the Dead Man's Act applies, and I cannot testify that Mom said I should have the table and chairs? You had better, if you are that child, have independent evidence, such as a writing from the parent that has been appropriately documented, and perhaps the testimony of a third party who's not interested in that case. That is what the statute says. So if Mom's going to give me anything, I better have her write it out and sign her name. It is all too regular that that is necessary. That is not the standard rule as personal property, that you need a deed to get title to a table and chairs. In light of my own experience in the trial courts, I wish that that was always the case. I thought you took the opposite position right at the beginning when I asked you the question. You said as long as I was arguing for a completed gift, I had no problem. I said that if you can prove it's a completed gift, there's a difference. If you can prove under the established evidentiary rules that it was a completed gift... But my real question was, does the Dead Man's Act apply? And your answer is yes. Yes, it does. There are no other questions that we can ask that the appeal be denied. Thank you. Thank you. Mr. Anderson? Thank you. Just briefly. I just wanted to highlight a few of the points in the affidavit of Ms. Fisher that I believe Mr. Beckett is suggesting would not create genuine issues of material fact even if the Dead Man's Act does not apply. The testimony of Ms. Fisher in the affidavit is that the defendant told the deceased that the 97 will was not valid. There's been no indication that the 97 will would have been invalid except that there would happen to be a 2002 will. That the defendant told her mother that it would only honor her deceased father if everything was left to the defendant. Again, there's no basis for that other than what happened to happen in the 2002 will. Also, the suggestion by the defendant to her deceased mother that the plaintiff only would show up and visit her mother because she wanted money. Any untrue statements regarding the basis for why a plaintiff would show up with her mother clearly would be an intentional tortious conduct that would fall under the tort claim. Also, as to the point regarding what was in the 1997 will as opposed to what may have been promised outside of the will, it's important to know that in the affidavit, Ms. Fisher in paragraph 8, she also says that the Argo property had been promised to her outside of the 1997 will by both her mother and her father. She's been living on that property since 1982 and still lives there. So clearly there's other admissible evidence outside of just what was in this 1997 will that at least applies to some of the assets that she claims were interfered with by the defendant. Let me ask you a hypothetical question again. Suppose my mother has a lot of money and I'm interested in getting a big chunk of that money. So I'm really nice to my mother. I take her out to dinner. I take her on vacations. Is there a problem with that? No, I don't think there's anything wrong with spending time with your mother. What makes it tortious? When untrue statements are made regarding the intent of another party like plaintiff about her motives for visiting her mother such that it would influence her to change her estate planning. When statements are made by the daughter on vacation that the current will that she has that happens to leave items to the plaintiff and other children is not valid. And there's no basis for it being invalid. What's your best case upholding a cause of action for tortious interference with an inheritance expectancy? Well, I mean, I'm not sure that I've cited any cases that necessarily uphold it. You'd be the first. I'm sorry? We would be the first. Well, I'm not sure. Always an awkward position to be in. I don't know the answer to that or not, but I do know that according to the elements that are laid out at a minimum the statements that are made in the affidavit should defeat summary judgment. If this is a credibility issue, if it's not sufficient to convince a jury later on, that's for the jury to decide. But it's not for the court to decide as a matter of law at this point. At this point, what the court needs to determine is whether or not a triable issue of fact exists. That's all. Okay. Thank you, counsel. We'll take this matter under advisement and be in recess.